MORRISSEY, Respondent, v. CHICAGO, M. & ST. P. RY. CO.,
Appellant.

(226 N. W. 731.)

(File No. 5628.   Opinion filed September 20, 1929.)

*Ed. L. Grantham,* of Rapid City, and *H. O. Hepperle,* of Aberdeen, for Appellant.

*Kirby, Kirby & Kirby,* of Sioux Falls, for Respondent.

BURCH, J.  Plaintiff, while attempting to cross the tracks of defendant in the city of Sioux Falls on June 5, 1922, collided with a train of defendant, and the automobile in which he was riding was damaged.  Plaintiff claims the accident was caused by the negligence of defendant's employees, by reason of their failure to blow the whistle or ring the bell of the engine when approaching the crossing.  Defendant pleads contributory negligence on the part of plaintiff, in not keeping a proper lookout for the train as he approached the crossing, and in not using due care under all the circumstances.  The case was tried to a jury, and a verdict and judgment rendered in favor of plaintiff for $900 damages for injury to the automobile.  A motion for new trial was denied, and this appeal is from the judgment and order denying new trial.

The principal contention of appellant is that under the admitted physical facts the acts of respondent were as a matter of law negligent.  It is admitted that the whistle was not blown, but there is a conflict of testimony as to whether or not the bell was rung.  Since the verdict is for respondent, we must assume for purposes of this appeal that no warning of the approach of the train was given either by the whistle or bell.  Respondent was approaching the tracks from the south, at the rate of about 8 miles per hour; the train was running southeasterly, about 12 miles per hour, on a track which turns near the west line of the street nearly east.  On the side track between plaintiff and the train, just west of the street, was a string of freight cars; on the west side, in the street, near the tracks, was a watchman's lookout station; just to the west of the sidewalk was a line of picket fence and a tree about 12 feet high, so that the view to the northwest was shut off and the approaching train could not be readily seen.  A surveyor's diagram shows that a train to the west would come into view of one near the center of the street 25 feet south of the track, the line of vision passing just north of the watchman's station.  For a space

of 10 feet, between 40 and 50 feet south, the train could be seen with the line of vision south of the watchman's station, between the tree and such station. These measurements are made on the assumption that the freight cars stood as estimated. If the cars were in fact closer to the sidewalk, then the 10-foot space of visibility south of the watchman's station would be less, or entirely closed.

Respondent says he did not see the train until he passed the watchman's station, although on the lookout. The view to the east was obstructed by the Sioux Falls Boiler Works. When we consider that the space between the first view and the rail is only 25 feet, that the space within which a safe stop could be made is much less, owing to the projection of the automobile ahead of the driver's seat, and of the cars of the train over the rail, and after allowing time to look both ways, operate the brakes, and come to a standstill, we cannot say respondent was negligent in failing to stop far enough from the track to escape injury. We are not unmindful of the holding of this court in the case of Burboltz v. Chicago, Milwaukee & St. Paul Ry. Co., 47 S. D. 512, 199 N. W. 782, 784. In that case we lay down the law that a driver of an automobile truck approaching railroad tracks is bound to look and listen, where same would be effective, and a failure to do so is contributory negligence as a matter of law. In that case the driver knew trains were due about that time of day; he looked for the first time when about 8 feet from the track; and says he had a clear view of 189 or 190 feet, and no train was in sight. He did not look again until he was on the track, and not then until he heard the approaching train whistle, and saw it about 90 feet away, when he speeded up and tried to cross ahead of the train. After stating the speed of the train and the speed of the truck, and the distances which would be traveled by each, this conclusion is drawn:

"It follows that he either did not look when he says he looked, or he saw the train, because it was where he must have seen it. If he saw the train coming when he was 8 feet away, and tried to cross in front of it, he was negligent. If he did not look when he should have looked, and might have seen it if he had looked, and thus drove upon the crossing, he was equally negligent, and in either event he cannot recover."

In the case at bar respondent did not know any trains were

due, but he was bound to keep a lookout, and to see the train at the first opportunity. His first opportunity over which there is no dispute was 25 feet from the track; assuming that he was using all due care, and had his car under control, and was prepared and ready to stop, if need be, he could perhaps have stopped in the short space of safety, if he then saw the train, but he says he looked first to the east and then to the west. Since he had no knowledge of the approach of a train from either direction, we cannot say that he was bound to look west first. Considering the short space of time, less than a second, that he had to make the look to the east and then to the west in time to stop, we cannot say he is conclusively guilty of negligence. It is one's duty to use due care, but what acts constitute due care under all circumstances cannot be prescribed in advance, and, when not so prescribed, whether or not due care was exercised becomes a question of fact for a jury, and not one of law for the court.

█ We have no hesitancy in saying that under *all* circumstances one must look and listen before crossing a railroad track. Where the crossing is particularly dangerous, because of limited opportunity to see or hear, greater care must be exercised to obtain the view or sound before it is too late to save oneself; but can we go so far as to say that, if a view cannot be obtained, then it is the duty of one to stop and, if necessary, get out and go forward afoot, to see if the way is clear. The federal court in Baltimore & O. R. R. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, has gone that far, but that case involved a rural crossing. Ought we to go so far with reference to a crossing in a city street? City traffic is subject to municipal regulations, and cannot safely be handled without such regulations. One approaching a railroad crossing in a city might not be able to stop and go forward without violating such regulations and imperiling others on the street. We cannot say the law requires him to stop, where he cannot see or hear without doing so, unless we know the traffic regulations. We can say he must use due care. If he violates regulations necessary to his safety, he is guilty of negligence as a matter of law, and the court may so declare. If the negligence consists in failing to do what, under the circumstances, prudence, without regard to specific regulations, requires, it is a question of fact for the jury to declare. Under all the circumstances here, we think

the question of contributory negligence was a question of fact for the jury, and not one of law for the court. We do not relax any rule requiring strict care, but do recognize a distinction between city and rural traffic.

Appellant complains of the refusal of the court to give two instructions requested by it; one to the effect that obstructions to view, such as box cars upon the side tracks, and buildings, such as houses for flagmen and other railroad purposes, do not constitute negligence on the part of the defendant, but, when known to the driver of an automobile, impose upon him a duty to take higher precaution for his own safety, and the other to the effect that, if the driver of the automobile could have seen, had he looked, the approaching train in time to have avoided the collision, the verdict must be for the defendant. On examination of the court' instructions we find that the court instructed the jury to the effect that they should take into consideration the character of the crossing, whether or not the view was obstructed, and whether or not it was a dangerous crossing, and, if it was, that the plaintiff was bound to use greater care and precaution before attempting to cross, and further instructed the jury that it is a matter of common knowledge that a railroad crossing is dangerous, and it was the duty of plaintiff "to use all his senses, to look, to listen, and to use that care which every reasonably prudent man would use under the same circumstances." We think these instructions sufficient to cover the substance of the instructions requested, and it was no error to refuse to give the requested instructions.

Appellant also complains that the court failed to submit to the jury the questions of fact upon which the jury might determine defendant's liability, and in stating to the jury mere abstract propositions of law. We have examined the instructions with care, and do not think they are open to criticism. On the whole, the instructions are not unfavorable to appellant. While the jury are told that it was the duty of appellant's employees to blow the whistle or ring the bell, they are instructed that a failure to do so does not render defendant liable, unless such failure is the direct and proximate cause of the accident.

Finding no error in the record, the judgment and order denying new trial are affirmed.

POLLEY and BROWN, JJ., concur.

502

CAMPBELL, J. (dissenting). I cannot escape the conclusion that respondent's own testimony shows that under all the circumstances of this case he was guilty of contributory negligence as a matter of law. I think, therefore, that the learned trial judge erred in denying appellant's motion for a directed verdict, and that the judgment and order appealed from should be reversed.

SHERWOOD, P. J., concurs in dissent.