ARKANSAS POWER & LIGHT COMPANY *v.* KENNEDY.

4-3439

Opinion delivered April 16, 1934.

Rose, Hemingway, Cantrell & Loughborough and J. W. Barron, for appellant.

Tom J. Terral, for appellee.

BUTLER, J. G. G. Kennedy brought this action to recover for injuries sustained by reason of a street car belonging to the appellant company coming in contact with his automobile at or near the intersection of 23d and State streets in Little Rock, Arkansas. A trial of the case resulted in a verdict and judgment in his favor, from which is this appeal.

The principal claim made for reversal is that the undisputed evidence establishes negligence on the part of the plaintiff which directly contributed to his injury, and that the trial court should have, at defendant's request, directed a verdict in its favor.

To make his case, plaintiff testified in his own behalf and was corroborated by one Bell, who professed to have been an eyewitness to the collision and who described the circumstances attendant thereon. The street car motorman, and some passengers on the car testified on behalf of the defendant, and this testimony is in sharp conflict with the evidence adduced on the part of the plaintiff.

In discussing the plaintiff's testimony, certain discrepancies in the account he gave of the occurrence are suggested which tend to discredit his testimony, and circumstances are argued which, it is claimed, cast doubt on the testimony of the witness Bell. The matters argued are not properly for our consideration, but were for the jury, and doubtless were presented to, and considered by it. The jury having resolved these questions in favor of the plaintiff, under settled rules we must accept its

conclusion as final. The question then is, does the evidence on the part of the plaintiff, viewed in a light most favorable to him, justify us in declaring as a matter of law that it presents no question for the jury, but conclusively shows the failure of the plaintiff under the then existing circumstances to act as an ordinarily prudent person would similarly situated?

To sustain its contention, appellee calls to our attention the cases of *Chicago, R. I. & P. Ry. Co.* v. *Abel,* 182 Ark. 651, 32 S. W. (2d) 1059; *Fair Oaks Stave Co.* v. *Shue,* 184 Ark. 1041, 44 S. W. (2d) 670; *Missouri Pac. Rd. Co.* v. *Trotter,* 184 Ark. 790, 43 S. W. (2d) 762; *St. Louis, S. F. R. Co.* v. *Tidmore,* 185 Ark. 177, 47 S. W. (2d) 16,—and insists that the facts of the instant case are so nearly like those of the cases cited as to make it necessary for us to reach an identical conclusion.

In the case first cited, the plaintiff was an employee of the railway company and engaged in interstate commerce. His work, at the time he was injured, required him to be near the line of the railway over which trains were passing to and fro, and it was his duty to watch for the trains and get out of their way. The work in which he was engaged made a great deal of noise so as to interfere with his hearing the approach of trains. While engaged in work and at a place where his view was unobstructed for half a mile, he stepped upon the track without looking for the approach of trains and was struck by one passing at that time and was injured. On this state of facts it was held that according to appellee's own statement he assumed the risk incident upon the performance of his duties without relying upon his own watchfulness to keep "in the clear," as the rules of the company required, and therefore he was responsible, himself, for his injury.

In the Shue case, next cited, plaintiff and his wife procured a hand car to go on a mission for their own business and pleasure, and were operating the car at night on the log road of the defendant company. They were advised that a tractor with two cars attached to it was being operated on the road by the company that night and were warned to look out for it. They pro-

ceeded on their journey without keeping any lookout for the tractor. The court said: "Although advised to look out for this equipment, neither did so, but blindly proceeded into a collision, which resulted in her (the wife's) death."

In the Trotter case, *supra*, the injury to Trotter was caused by a passing railroad train as he stepped upon a railroad crossing. It was at night, the headlight of the locomotive was burning, casting a brilliant light down the track, the brightest point being about 700 feet ahead of the engine where it illuminated the track and entire right-of-way with a beam of light approximately 100 feet wide. The plaintiff admitted that he walked upon the track without looking or listening for an approaching train with his vision obscured by a sack which he was carrying upon his shoulder. He failed to observe the light of the approaching train until it was so near that he could not spring aside and save himself from injury.

In the Tidmore case, *supra*, the person injured was an experienced workman of the railway company and, at the time of his injury, was engaged in interstate commerce. He admitted that at the place of his work, which was near the track of the railroad company, he was required by the rules of the company to look out for his own safety, and that he was injured because he carelessly got in the way of a moving train. In that case it was held that there was no evidence of any negligence on the part of the crew of the engine, but that the accident occurred by reason of appellee's inattention in taking a position sufficiently near the track to cause him to be struck by a moving car, which position it was unnecessary for him to occupy in the performance of his duty.

In the case at bar the evidence accepted by the jury distinguishes it from the cases above cited, and tends to show that when Kennedy was attempting to turn into 23d Street from State in an automobile driven by himself, a car parked near the corner made it necessary for him to describe a greater arc than usual, which put him upon the track of the street railway; and because of some holes in the pavement he applied his brakes in an effort to lessen the speed of his car and inadvertently "stalled"

his engine while still upon the track. At this time the street car was approaching, and was then about 150 feet away. Kennedy did not attempt to get out of his car, but tried to get it in motion, knowing at the time that he was in some danger. He succeeded in starting his engine, but before he could clear the track the street car struck him. Before this happened and while he was attempting to start his car, observing the inattention of the motorman, he sounded his horn to attract his notice to his predicament.

Invoking the rule that a duty rests upon the driver of an automobile to exercise ordinary care in its operation for his own and the safety of others (*Northwestern Cas. & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S. W. (2d) 796), appellant argues that such care would require that appellee should have abandoned his car when he saw the street car 150 feet away approaching, and that the motorman was not keeping a constant lookout ahead; that, therefore, he should not have assumed that the motorman would stop before hitting him. *Ark. P. & L. Co.* v. *Boyd,* 188 Ark. 254. In support of this argument we are cited to a number of cases where an occupant of a stalled automobile was held negligent as a matter of law for failure to get out of it and reach a place of safety. We do not review these cases, but the general rule which governs them is stated in *Va. & S. W. Ry. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887, cited in one of these cases; *Dick* v. *Va. E. & P. Co.,* 158 Va. 77, 163 S. E. 75: "No one can be allowed to shut his eyes to danger in blind reliance upon the unaided care of another without assuming the consequences of the omission of such care." We do not dissent from this doctrine, but under the facts of the case at bar we think it a question for the jury as to whether or not the plaintiff did this. For we cannot say that the minds of all reasonable persons would agree that appellee failed to act as a man of ordinary prudence under the circumstances. It develops that Kennedy used poor judgment in remaining in his car, but the jury might have justly inferred that he did not rely solely upon the motorman to stop the street car, and that he might reasonably have expected to be able to extricate both him-

self and the car from the place of danger before the street car reached him; and also that, if he were unable to do this, the motorman would see his situation in time to keep from running him down.

The general rule by which the conduct of Kennedy is to be measured is stated in Berry on Automobiles, vol. 1 (6th Ed.) p. 165, approved by this court in *Ark. P. & L. Co.* v. *Crooks*, 188 Ark. 513, where it is said: "The driver of an automobile or other vehicle stopped for any temporary cause in front of a street car cannot be held guilty of contributory negligence as a matter of law if he does not desert his vehicle, at least until it is reasonably certain that an impact is unavoidable. He has a right to assume that those in charge of the operation of the approaching street car, seeing his predicament, will not recklessly run him down. He has a right to make a reasonable effort to start his vehicle, if it is susceptible of being started, and so save it and its occupants from injury. Whether his acts in so doing or attempting to do were unreasonable and negligent would be a question of fact, which it would be the province of the jury to determine, in view of all of the circumstances of the particular case."

As a further ground for reversal, it is argued that the court erred in giving certain instructions to the jury at the request of the plaintiff. We do not deem it necessary to set out these instructions, since it is our opinion that they are clear declarations of well-settled principles supported by the evidence in the case. We do not think that the objections made to these instructions are sound, and there was no error in giving them.

On the whole case we find no reversible error, and the judgment of the trial court is therefore affirmed.